**Application of Samuel M. NEELY.**
**Patent Appeal No. 7583.**

United States Court of Customs
and Patent Appeals.

June 2, 1966.

William Douglas Sellers, George A. Brace, Pasadena, Cal., Munson H. Lane, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

KIRKPATRICK, Judge.

This is an appeal from a decision of the Board of Appeals affirming the examiner's rejection of claims 2, 3 and 10 of the appellant's application serial No. 141,753 entitled "Floodlighting of Athletic Fields," as "unpatentable over Cahill" 1,235,527. We consider this a section 103 rejection.

Claim 2 is as follows:

2. A method of floodlighting a hockey rink consisting in the steps of erecting two poles at diagonally opposite corners respectively of the rink with a plurality of floodlamps atop each pole, and directing the lamps toward respective spots on the playing surface of the rink in a pattern of substantially uniform light intensity throughout the playing surface with the axes of certain of the lamps directed toward the center zone of the rink from one pole crossing those from the other pole, thereby to illuminate the space above the playing surface.

Claim 3 provides that the lamps be directed towards spots on the playing surface of the rink "in a pattern in which concentration of spots increases with an increase in distance of the spots from the poles."

Claim 10 is not limited to a hockey rink and merely claims the location of poles, pointing out that it leaves both sides and both ends of the field "free of view-obstructing poles" and, by adjusting the individual lights, illuminates the entire field to a desired minimum intensity.

The appealed claims are all method claims, but, so far as the issue of obviousness is concerned, the considerations applicable are no different from claims for physical structures or arrangements.

The main reference considered by the board and by the examiner is the Cahill patent referred to above. That patent is for "Illuminating Systems for Base-Ball and Other Games." None of the

sixteen claims refer to illuminating anything other than a baseball field and, although the specification refers to the illumination of large areas so that baseball and other games may be played at night, hockey rinks are nowhere mentioned.

There is no doubt that, as the appellant argues, Cahill's nine-pole illuminating system is designed to meet problems of lighting quite different from those presented by hockey rinks and that many considerations go to the "crux" of Cahill's system for illuminating a baseball field and are not applicable to lighting a hockey ring where substantially all players, save the two goal keepers, are constantly and rapidly changing both position and direction of movement over the rink. However, that does not mean that a person with a knowledge of the lighting requirements of a hockey rink could not learn from Cahill the method of doing it. As the board, referring to light, said, "the need for distribution and intensity, generally, would be as well known as for a baseball field."

We fail to see anything in arranging floodlights and directing their beams so that a given area is lighted to the greatest advantage which would be beyond the capacity of a person ordinarily skilled in the art. The essence of the method claimed is simply placing two poles at diagonally opposite corners and providing them with enough floodlights to adequately light a hockey rink. Certainly, it is obvious, when uniform illumination of an area is desired, to aim the floodlights at the spots which will produce uniform illumination and, if all lamps are of the same intensity, to increase the number of lamps aimed at a particular spot as the distance from the pole increases.

The appellant's application states that it is conventional to use four poles on each side of a hockey rink, and Cahill discloses the use of multiple poles with lamps selectively aimed. It can hardly be said that it is an unexpected result if the removal of most of the poles improves the spectators' view of the rink or that a two-pole system will be less expensive than a four-pole.

The decision of the board is affirmed. Affirmed.